UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. ) |
| MARD, INC. F/K/A KIOR, INC., and FRED H. CANNON, JR., | ) ) ) ) |
| Defendants. | ) ) ) |

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendants Mard, Inc., formerly known as KiOR, Inc. ("KiOR"), and Fred H. Cannon, Jr. (collectively with KiOR "Defendants"), and alleges as follows:

## SUMMARY

1.  KiOR is an alternative fuel company that raised $150 million by offering its securities to the public. The company's disclosures suggested that its technology would be commercially viable. But KiOR, in documents approved and signed by Cannon, did not disclose key assumptions that the company relied on to generate a metric evidencing its commercial viability—the yield of fuel from each ton of raw materials. By engaging in the conduct described in this Complaint, Defendants have committed, and unless restrained and enjoined will continue to commit, violations of the antifraud provisions of the Securities Act of 1933.

## DEFENDANTS

2.  **Mard, Inc., formerly known as KiOR, Inc.,** is a Delaware corporation with its principal place of business in Pasadena, Texas. As KiOR, its common stock was registered with

the Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 and its shares listed on the NASDAQ until they were removed from listing on November 6, 2014. On November 9, 2014, KiOR filed for bankruptcy. On June 9, 2015, the bankruptcy court approved KiOR's plan of reorganization, which became effective on June 30, 2015. KiOR emerged from bankruptcy as a private company, and was subsequently re-named Mard, Inc.

3. **Fred H. Cannon, Jr.,** age 65, resides in Houston, Texas. At all relevant times, Cannon was President and CEO of KiOR and a member of its Board of Directors. Cannon retired from KiOR on March 31, 2016.

## JURISDICTION AND VENUE

4. The Commission brings this action pursuant to authority conferred on it by Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)].

5. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)].

6. Venue is proper in this district because at all relevant times Cannon was a resident of Houston, Texas.

7. In connection with the conduct described in this Complaint, Defendants directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

## FACTUAL ALLEGATIONS

8. Formed in late 2007, KiOR's business was creating fuel from biomass, specifically wood chips, through a process by which the biomass is exposed to a catalyst (a substance that causes or accelerates a chemical reaction), resulting in crude oil. The science

behind this process is known and proven. And KiOR was able to successfully create crude oil using this process in a lab-sized pilot unit.

9. After raising sizeable private investments, KiOR increased the scale of its work to a larger demonstration unit, which also successfully created crude oil.

10. In June 2011, KiOR completed its initial public offering (IPO), raising $150 million. In 2011 and 2012, KiOR built a limited commercial production facility in Columbus, Mississippi. This unit ultimately produced crude oil that was converted to just over 890,000 gallons of fuel.

### KiOR's Form S-1 Did Not Disclose Key Assumptions

11. KiOR's registration statement for its initial public offering ("Form S-1") became effective on April 11, 2011.

12. The Form S-1 described the efficiency with which KiOR had allegedly produced fuel in its demonstration unit:

> Our proprietary catalyst systems…have achieved yields of renewable fuel products of approximately 67 gallons per bone dry ton of biomass, or BDT, in our demonstration unit that we believe would allow us to produce gasoline and diesel blendstocks today at a per-unit unsubsidized production cost below $1.80 per gallon, if produced in a standard commercial production facility with a feedstock capital of 1,500 BDT per day.
>
> . . .
>
> We have increased our overall process yield of biomass to renewable fuel from approximately 17 gallons per BDT to approximately 67 gallons per BDT. Our research and development efforts are focused on increasing this yield to approximately 92 gallons per BDT.

13. KiOR's claims regarding yield were important to investors because the efficiency with which it could create fuel was a factor that would impact the profitability of the company.

14. Although the Form S-1 claimed that KiOR had "achieved" yields of 67 gallons per ton of biomass, it did not disclose that KiOR had only "achieved" this yield under certain conditions, and only by making key assumptions about certain technologies that were still under development by KiOR.

15. These assumptions were significant. If the assumptions turned out to be incorrect, certain internal KiOR documents show typical yields in the demonstration unit were in the range of 44 to 55 gallons, approximately 18-30% less than the disclosed yield of 67 gallons.

16. The first undisclosed item was that KiOR used an off-the-shelf, commercially available additive as a catalyst ("commercial catalyst") during testing and development that KiOR exposed to particular operating conditions to generate the desired catalytic reaction. KiOR used the commercial catalyst during testing and development because it was the only product available in sufficient quantities for the demonstration unit at that time. And although it was using the commercial catalyst for testing, KiOR planned to use a proprietary catalyst ("internal catalyst") that was still under development as its production catalyst. Thus, the runs in the demonstration unit that supported the 67-gallon yield disclosure were not conducted with the internal catalyst that KiOR intended to use at its production facilities. And certain internal documents show that tests performed at that time with the internal catalyst that was under development resulted in lower yields than the commercial catalyst.

17. Second, KiOR did not disclose that it assumed its internal catalyst would deactivate (i.e. become less effective) at a significantly lower rate than the commercial product that was used as a catalyst during testing. Specifically, the company assumed a catalyst replacement rate of 0.83%, while certain internal documents calculated a 7% replacement rate for the demonstration unit. If KiOR was unable to develop a catalyst with a deactivation profile

that permitted operations at the assumed rate, then the 67-gallon yield would be more costly to achieve in a commercial operation.

18. Third, KiOR failed to disclose that the 67-gallon yield assumed KiOR would be able to recover nearly all of the hydrocarbons generated by the catalytic reaction, including amounts that are routinely lost to water and gas during the production process. At the time of the IPO, certain estimates indicated KiOR was losing 10% to 30% of the hydrocarbons during the separation process. While KiOR believed that the recovery of these losses would be possible, the Company had not yet completed its development of such a process. Indeed, KiOR had not completed this work prior to filing for bankruptcy.

19. Cannon knew or should have known of the existence of these key assumptions. Despite this, Cannon approved of and signed the Form S-1 and received incentive stock bonuses based, in part, on the completion of the IPO.

20. KiOR and Cannon knew or should have known that disclosure of these assumptions was necessary to provide complete and accurate information to investors about the actual yield.

### The Yield Disclosures Are Repeated Without the Underlying Assumptions

21. Consistent with statements contained in the Form S-1, Cannon and others told prospective investors during meetings preceding the IPO that KiOR had achieved a 67-gallon yield, again without disclosing the assumptions described above.

22. The figure was repeated again in later filings by KiOR without disclosing these assumptions.

### KiOR Closes the Columbus Facility and Files for Bankruptcy

23. KiOR did not achieve the 67-gallon yield at its production facility in Columbus.

24. On December 23, 2013, KiOR announced that it was suspending commercial operations at the Columbus facility to focus on optimization projects. On March 17, 2014, KiOR announced the closing of its Columbus facility so it could refocus its attention on research and development.

25. In November 2014, KiOR declared Chapter 11 bankruptcy, emerging as a privately-owned entity in June 2015.

26. Cannon retired from the company on March 31, 2016.

## CLAIM FOR RELIEF

### Violation of Sections 17(a)(2) and (3) of the Securities Act
### (Against KiOR and Cannon)

27. The Commission incorporates the allegations in paragraphs 1-26 as if fully set forth herein.

28. By engaging in the conduct described above, KiOR and Cannon, directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, and at least negligently, obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading and engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit on the purchaser.

29. Accordingly, KiOR and Cannon violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)].

## **RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

a. finding that each of the Defendants committed the violations alleged against them in this Complaint;

b. permanently enjoining Cannon and KiOR from violating Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)];

c. ordering Cannon to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and

d. granting such other and further relief as this Court deems just and appropriate.

Dated: September 26, 2016　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　UNITED STATES SECURITIES AND
　　　　　　　　　　　　　　　　　　　　EXCHANGE COMMISSION

　　　　　　　　　　　　　　　　　　　　_/s/ Timothy L. Evans_
　　　　　　　　　　　　　　　　　　　　Timothy L. Evans
　　　　　　　　　　　　　　　　　　　　Attorney-in-Charge
　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24065211
　　　　　　　　　　　　　　　　　　　　S.D. Tex. Bar No. 1742859

　　　　　　　　　　　　　　　　　　　　Kathleen V. Galloway
　　　　　　　　　　　　　　　　　　　　Of Counsel
　　　　　　　　　　　　　　　　　　　　Texas Bar No. 00785136
　　　　　　　　　　　　　　　　　　　　Michael A. Umayam
　　　　　　　　　　　　　　　　　　　　Of Counsel
　　　　　　　　　　　　　　　　　　　　Virginia Bar No. 47492

　　　　　　　　　　　　　　　　　　　　United States Securities and
　　　　　　　　　　　　　　　　　　　　Exchange Commission
　　　　　　　　　　　　　　　　　　　　Burnett Plaza, Suite 1900
　　　　　　　　　　　　　　　　　　　　801 Cherry Street, Unit 18
　　　　　　　　　　　　　　　　　　　　Fort Worth, TX  76102
　　　　　　　　　　　　　　　　　　　　Telephone:  (817) 978-5036 (TLE)
　　　　　　　　　　　　　　　　　　　　Facsimile:  (817) 978-4927
　　　　　　　　　　　　　　　　　　　　evanstim@sec.gov

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff United States*
　　　　　　　　　　　　　　　　　　　　*Securities and Exchange Commission*